## Sawyer & als. *vs.* Hammatt & als.

A. gave B. and others, a bond, conditioned for the conveyance of a township of land, reserving the right to take off 3,000,000 feet of board logs, without limitation as to time ; and subsequently made a conveyance to them without condition, but still went on to cut the 3,000,000 feet of timber. While he was doing this, B. sold his interest in the township, taking from the purchasers a writing acknowledging that they took the land, " *subject to a permit from former owners to A. to cut and obtain 3,000,000 feet of timber on said township the present year,"* and *agreeing that A. might take without hindrance from them.* Held, that A., as between him and said purchasers, was entitled to take the 3,000,000 feet of timber, and was not limited in taking it off to the year or winter succeeding the making of the contract.

Parol evidence, or contracts in writing between other parties, were not admissible, to show the understanding of the parties in regard to the meaning of the bond or subsequent writing.

This was an action of *trover*, for a quantity of logs, the facts in which are sufficiently stated in the opinion of the Court, which was delivered by

Emery J. — This is an action of trover, for a quantity of logs cut on township No. 1, in the 8th range, previously to the 1*st* of *January*, 1834, but a part of which were removed after that time. On the 26*th* of *December*, 1832, *William Hammatt* agreed to sell the township, and became bound to *Robert Treat*, *Waldo Peirce*, *Hazen Mitchel*, *Nathaniel Treat* and *Elihu Baxter*, in the penal sum of fifty thousand dollars, to produce to them good and sufficient deeds, in the proportions in which they had severally paid for the township, reserving to the said *Hammatt*, the right to cut and take from the same, 3,000,000 feet of board logs. We are to ascertain whether the admissible evidence, together with that to which no objection has been made, furnish sufficient grounds for supporting the verdict, which was for the plaintiffs ; and we must look to the situation of the parties in the origin and progress of the concern. In the order of time, we notice the first act succeeding the execution of the bond. It is the conveyance made by *Hammatt* on the 17*th* of *January*, 1833, of the whole township, in his deed of that date, to *Pierce* and *Treat*, *Hazen Mitchell* and *Elihu Baxter*, one quarter to each. This conveyance, being unconditional, were there nothing more in the case to qualify the rights of the parties, would extinguish

the reservation antecedently made in the bond, and operate by way of estoppel against *Hammatt's* claim under that reservation. But on the 25*th* day of *January*, 1833, *Mitchell* conveyed his quarter to *Sawyer & Little.* On the 1*st* of *March*, 1833, *Pierce & Treat* conveyed their half to *Sawyer*, and on the sixteenth of *March*, 1833, *Baxter* transferred his interest in the township to *Sawyer.* This made *Sawyer & Little* proprietors of the whole, *Sawyer* owning seven eighths. On the 16*th* of *March*, 1833, *Sawyer* sold one eighth of the land to *Chamberlain.* And on the 13*th* of *April*, 1833, *Sawyer* also disposed of another eighth of the territory to *Crabtree*, who are the plaintiffs in the present suit.

*Hammatt* is still mortgagee of an undivided quarter, to secure about four thousand dollars of the purchase money, no part of which was then, or at the time of the trial, payable.

Before the execution of the bond made by *Hammatt*, containing the reservation, it would seem that a certificate was drawn up on the 24*th* of *Dec.* 1832, marked D. and signed by *Elihu Baxter*, *W. T. & H. Pierce*, *Nathamiel Treat* and *Hazen Mitchell*, by which they agreed to buy Township No. 1, in 8th Range, for $30,000 of *Hammatt*, he deducting therefrom, $3,000 for stumpage of 3,000,000 feet timber to be obtained by him the present winter. But we exclude this evidence, not only because there is no proof that it was delivered to *Hammatt*, and by him accepted, but if it had been, it was superseded by the execution of *Hammatt's* bond on the 26*th* of *December*, 1832, containing the reservation, and by their acceptance of it. This must be considered as disclosing the true views of the parties. The paper marked D. we therefore deem inadmissible evidence. The bond to *Samuel Moor* from *Waldo Pierce* and *Robert Treat*, dated the 12*th* of *January*, 1833, conditioned to convey to him a part of this township, is also inadmissible. It was between other parties. And although *Elihu Baxter* is called to speak about it, he is indistinct as to his knowledge whether *Hammatt* saw it. He rests only in impressions. They may have been well founded. From the relationship of *Carr*, the draftsman, to *Hammatt*, some slight grounds of probability may arise that the fact was so. But even had he seen it in the act of being written, he might have been very inattentive to its details, and not

have known any thing of the restriction. There is no proof that he assented to it.

We think his rights ought not to be affected by this paper, and we exclude it. If any additional reason were required, we perceive that this was assigned to *Sawyer*, on the 23*d* of *January*, 1833, more than thirty days before the paper, hereafter to be noticed, was written.

The papers marked A. and B. being contracts of *Sawyer* and *Ellis B. Usher*, to purchase of *Mitchell* and others, must also be excluded, being executed the 24*th* of *January*, 1833. Though, if the bond, certificate or agreement, signed by *M. P. Sawyer*, of that date, to *Hazen Mitchell*, were admitted, it would disclose that *Sawyer* and *Usher* say, it is understood that we have no claim on account of the 3,000,000 feet of lumber permitted to be obtained in the present winter. The bond of 26*th* of *December*, 1832, from *Hammatt* to *Mitchell* and others, is in evidence without objection. It is not necessary to be shown that either of the plaintiffs had seen the bond at the time or before they became purchasers. The purport of it might have been otherwise communicated. *Baxter*, the plaintiffs' witness, rather thinks *Sawyer* understood the bond. If he did understand it, all the plaintiffs must be affected by the result of that information, were it a prerequisite to the establishment of the defendants' right. For the plaintiffs have associated for a joint recovery of damages. Unless there were fraudulent concealment or deceptive representation practised toward *Sawyer*, or the plaintiffs, on the part of *Hammatt*, the Court do not perceive, upon a consideration of all the facts legally admissible, which have been presented in this case, that *Hammatt* can fairly be deprived of the benefit of the reservation.

*Baxter* says, there was no express agreement between *Hammatt* and the purchasers, that if the timber was not taken off during that season, that it should be forfeited, though he understood him to be restricted to that season. We are not satisfied that *Baxter* can, by his testimony, be admitted to vary or explain the written evidence hereafter to be mentioned. In addition to reserving to the said *Hammatt*, in the condition, the right to cut

and take from the township 3,000,000 feet of board logs, it is worthy of remark, that there is the following writing on the bond: " I guarantee that there is pine timber, such as is usually cut for " mill logs, on the said tract of land, to the amount of 30,000,000 " feet of boards, provided the aforesaid purchasers request, within " four months. The same shall be surveyed and estimated by " persons mutually appointed by them and me. And if the same " shall fall short of that amount, I will pay back to them at the " rate of one dollar per thousand, for what it may so fall short, " and also the expense of surveying the same. But if it shall " amount to 30,000,000 feet, then the said purchasers shall pay " all expense of surveying as aforesaid. For all timber I may " cut, more than 3,000,000 feet, I will pay a stumpage of two " dollars per thousand.     " *William Hammatt.*"

It is strongly to be presumed that this bond and stipulation, on the part of *Hammatt*, would be a subject of notice and commentary by sellers and purchasers of timber lands. The certificate marked A., written on said bond and signed by *Waldo Peirce, Robert Treat, H. Mitchell,* and *Elihu Baxter,* giving their understanding of its meaning, is not admissible in evidence for any purpose, but to contradict testimony which is given by either of the signers. Because it was not written till after the paper of the 25*th* of *February,* 1833. The effect of the writing marked C. dated *February* 25, 1833, considered with regard to the reservation in the bond, to which reference is indirectly made, must necessarily have an important bearing in deciding this case. It commences by way of recital : " We having bought of *Hazen* "*Mitchell,* three eighths of township No. 1, in the eighth range, " subject to a permit from former owners to *William Hammatt,* " *Esq.,* to cut and obtain 3,000,000 feet timber on said township " in the present year," and then *goes* on to say, " hereby agree " that said *Hammatt* may there get said 3,000,000 feet timber " without hindrance or claim from us, but shall pay to us for " stumpage two dollars per thousand for all he shall obtain over " said 3,000,000 feet.   Signed by     *M. P. Sawyer,* and

                       " *J. S. Little.*"

These gentlemen are two of the plaintiffs. Reference is made in this paper to a permit from former owners. And *Mitchell*

says, the reservation in the bond was that permit, which we do not find to be qualified there with any limitation of time as to that quantity. The reference then is to the bond, and revives it. And if any mistake were committed by wrongly referring to it as a permit, in a court of equity it would be corrected by the writing referred to. *Argenbright* v. *Campbell & wife, 3 Hen. & Mumf.* 144.

The 3,000,000 feet are most distinctly admitted to be the property of *Hammatt*, that he may get it without hindrance or claim from them ; and even if he should obtain a greater quantity, he shall pay for stumpage only $2 per thousand. The defendant, *Hammatt*, has really purchased and paid for this quantity, and was rightfully entitled to the possession of the portion of it, for which the verdict has been rendered against the defendants. It was urged, that even if *Hammatt* might have cut and taken the timber before the 1*st* of *January*, 1834, he could not do so after that period. And the cases of *Stowell* v. *Pike*, 2 *Greenl.* 387, and *Pease & al.* v. *Gibson*, 6 *Greenl.* 81, have been pressed upon our consideration. Those were actions of trespass. This is trover. This is a purchase of a definite quantity, with an implied right to take more at the price of two dollars per thousand, should it so happen that he should have cut more than the three millions feet.

The case is so distinguishable from those cases, that without going more minutely into the examination and comparison, we see nothing in them to justify the claim of the plaintiffs to the timber which *Hammatt* had severed from the freehold, in which he, too, was interested as mortgagee. As he had not entered for condition broken, we do not place the decision on that ground. Nor do we dismiss it from our recollection. He was the rightful owner of the timber cut. And, inasmuch as the evidence does not disclose that there has been taken by the defendants a greater quantity than 3,000,000 feet, the verdict must be set aside and a new trial granted. But unless the evidence be materially changed, the action cannot be supported.

*F. Allen*, and *W. P. Fessenden*, for the plaintiffs.

*Rogers*, for the defendants.